UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIMENSION ONE SPAS, INC., a California corporation,<br><br>                Plaintiff,<br><br>v.<br><br>COVERPLAY, INC., an Oregon corporation, and E. JESS TUDOR, an individual,<br><br>                Defendants.<br><br>AND RELATED COUNTERCLAIM | Civil No. 03cv1099-L(CAB)<br><br>**ORDER GRANTING PLAINTIFF'S AND COUNTER-DEFENDANT'S MOTION *IN LIMINE* NO. 2** |

       This is a patent infringement action and counterclaim pertaining to pool covers. In the April 26, 2006 order on cross-motions for summary judgment, certain issues of the inequitable conduct defense were bifurcated for bench trial before the case proceeds further. Plaintiff and Counter-Defendant Dimension One Spas, Inc. ("Dimension One") filed its motion *in limine* no. 2 to exclude the deposition transcript of Roger J. Ouellette, one of the inventors of the patent at issue in this case. The deposition was taken by Dimension One in a prior lawsuit in which Dimension One claimed Ouellette infringed the same patent. Defendants and Counterclaimants Coverplay, Inc. and E. Jess Tudor (collectively "Coverplay") intend to use portions of the transcript at trial in support of their inequitable conduct defense. The court finds this motion

suitable for disposition on the papers and without oral argument in accordance with Civil Local Rule 7.1(d)(1).  For the reasons which follow, Dimension One's motion *in limine* no. 2 is **GRANTED**.

Dimension One is the assignee of Patent No. 5,131,102 (the '102 Patent).  This invention is intended to prevent the loss of heat energy and increased maintenance for the removal of debris falling into the spa which occurs when spas are not covered.  In the late 1980s, Dimension One purchased a spa cover lift device called the Starlite Lifting Device ("Starlite"), which had a patent application pending ("Wall Patent" application).  The inventors of the '102 Patent, Ouellette, Edwin Sorensen II, and Philip Salley (owners or employees of Dimension One, collectively the "Inventors"), set out to improve the Starlite device.  Associated with the improvements, the '102 Patent issued on July 21, 1992, and is entitled "Spa Cover Lift Assembly."

Coverplay holds Patent No. 5,974,599 (the '599 Patent), embodied in spa cover lifters known as the Cover*Up! and Forward Fulcrum, which Coverplay markets.  On June 2, 2003, Dimension One filed this patent infringement action, alleging that Coverplay's Cover*Up! and Forward Fulcrum products infringed the '102 Patent.  Coverplay answered and filed a counterclaim seeking a declaratory judgment that the '102 Patent is invalid, unenforceable, and not infringed.  This court issued an order construing the claims of the '102 Patent on December 2, 2005.

On October 15, 2004, Dimension One moved to amend its complaint, which motion was granted by the Magistrate Judge on September 12, 2005.[1]  The First Amended Complaint was filed the same day.  It added Tudor as a Defendant, and alleged additional state law claims for unfair competition.  On Coverplay's subsequent motion to dismiss, Dimension One was granted leave to amend, and on February 17, 2006, it filed a Second Amended Complaint.[2]  In response

---

[1]   The delay in ruling on this motion is attributable to the parties' prolonged settlement negotiations.

[2]   Certain portions of the Second Amended Complaint have been stricken per order filed May 19, 2006.

to the Second Amended Complaint, Coverplay filed an answer and a counterclaim, which included the inequitable conduct defense.  This defense is the subject of the upcoming bench trial.

The inequitable conduct defense was addressed in the April 26, 2006 order on the parties' cross-motions regarding the defense. Coverplay claimed inequitable conduct in two respects:  (1) the Inventors of the '102 Patent allegedly failed to disclose the Wall Patent and the related application; and (2) the Inventors allegedly failed to disclose the Starlite device to the PTO.  The court granted Dimension One's summary adjudication motion, and denied Coverplay's cross-motion with respect to the first instance, disclosure of the Wall Patent and the Wall Patent application.  With respect to the second instance, disclosure of the Starlite device, the court found genuine issues of material fact as to each element of inequitable conduct.  Accordingly, only the second instance is bifurcated for bench trial.

At bench trial Coverplay intends to introduce portions of Ouellette's deposition transcript from the prior lawsuit, Dimension One v. Roger J. Ouellette, *et al.*, 98cv877 JM (POR).  Dimension One moves to exclude the transcript as hearsay.

"The hearsay rule prohibits admission of certain statements made by a declarant other than while testifying at trial."  *United States v. Salerno*, 505 U.S. 317, 320 (1992), *citing* Fed. R. Evid 801(c) (hearsay definition); 802 (hearsay rule));  *see also United States v. McGuire*, 307 F.3d 1192, 1205 (9th Cir. 2002).  Coverplay concedes that unless a hearsay exception applies, the hearsay rule blocks admission of Ouellette's deposition testimony.  (Opp'n at 2.)  "Rule 804(b)(1) . . . establishes an exception to the hearsay rule for former testimony."  *Salerno*, 505 U.S. at 321.  It provides in pertinent part:

> The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> (1) Former Testimony.  Testimony given as a witness . . . in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

"The 804(b)(1) exception to the hearsay rule does not apply, however, unless the witness is 'unavailable' under Rule 804(a)."  *McGuire*, 307 F.3d at 1205.  Accordingly, to come within the

exception, the declarant must be unavailable to testify at trial, and the party against whom the testimony is being offered must have had a similar motive to develop the testimony at the deposition. Dimension One contends that Coverplay fails to meet either requirement.

Coverplay relies on Rule 804(a)(5) as the basis for Ouellette's unavailability. It provides in pertinent part:

> "Unavailability as a witness" includes situations in which the declarant –
>
> . . . is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance . . . by process or other reasonable means.

"[T]he imposition of the requirement of unavailability represents a strong preference for the personal appearance of the witness as an aid in evaluating his testimony." 30B Michael M. Graham, Federal Practice and Procedure § 7073 at 753 (Interim Ed. 2006). "The burden of showing unavailability is upon the party offering the statement." *Id*. § 7072 at 748. Coverplay concedes this. (Opp'n at 3.) It argues Ouellette is unavailable because he resides in Canada.

The court's file in the prior lawsuit shows that after a year and a half of intense litigation, Ouellette's counsel withdrew, and shortly thereafter, on November 19, 1999, default was entered against Defendants. The motion to withdraw and the November 19 order indicate that Ouellette was believed to have moved to Canada. (*See* Decl. of John J. Murphey, filed 7/2/99, ¶¶ 14 -20; Decl. of Jean J. Ouellette, filed 7/9/99, ¶¶ 5-8; Order Striking Answer and Entering Default, filed 11/19/99, at 2.)

Five years later, Coverplay attempted to locate Ouellette. From March through September 2004, Coverplay's counsel, Richard E. Peterson, conducted several internet searches for the family name Ouellette in the United States and Canada, and made telephone calls based on the search results, but was not able to locate Ouellette. (Peterson Decl. ¶¶ 3-6.) In the summer of 2004, Tudor contacted sources at three companies in Arizona and California, whom he believed knew Ouellette, but the consensus was that he had "'disappeared' after he lost the lawsuit" filed against him by Dimension One. (Tudor Decl. ¶¶ 3-5.) In summer 2004, Coverplay's counsel Joanna M. Esty spoke to John J. Murphey, Ouellette's counsel in the prior lawsuit, who "told [her] that Mr. Ouellette had left the United States." (Esty Decl. ¶ 7.) She also

spoke to Ouellette's son Jean, and obtained the publicly available files from the prior lawsuit, but apparently did not inquire into Ouellette's whereabouts. (*Id*. ¶ 8.)

Based on the foregoing, Coverplay correctly concludes that "there is no evidence of Mr. Ouellette's whereabouts," "there is not [*sic*] evidence that Mr. Ouellette is not unavailable," and "**[a]ssuming** that [Ouellette] is still in Quebec, he is outside the United States and well beyond 100 miles of this Court." (*Id*. at 1, 8, 9 (emphasis added).)  However, this is insufficient to meet Coverplay's burden.

Coverplay's efforts to locate Ouellette were half-hearted at most.  Coverplay never tried to establish Ouellette's whereabouts or contact him through his son Jean.  It apparently did not attempt to contact William P. Doran, Ouellette's bankruptcy counsel, who filed a Notice of Filing Bankruptcy and Stay of Proceedings in the prior lawsuit on Ouellette's behalf.  The filing was made on November 18, 1999, after Ouellette was believed to have left for Canada. Coverplay did not retain an investigator to locate Ouellette.  Coverplay did not attempt to serve Ouellette with process, or employ any other reasonable means to procure his attendance at trial, as required by Rule 804(a)(5). Moreover, all of Coverplay's attempts to locate Ouellette occurred more than two years ago.  There is no evidence that Coverplay engaged in any efforts to locate Oulette since 2004.  Even if the court took at face value Coverplay's contention that Ouellette resided in Canada in 2004, there is no evidence of where Ouellette currently resides or that he resides outside the reach of process.  There is also no evidence whether Ouellette would be willing to appear voluntarily.

Coverplay has failed to meet its burden of showing that Ouellette is unavailable as a witness under Rule 804(a)(5).  The Court therefore need not consider Dimension One's

/ / / / /
/ / / / /
/ / / / /
/ / / / /
/ / / / /
/ / / / /

argument that Ouellette's deposition testimony should be excluded because Dimension One lacked a similar motive to develop testimony in the prior lawsuit. Dimension One's motion is therefore **GRANTED**.[3]

**IT IS SO ORDERED**.

DATED: December 23, 2006

M. James Lorenz
United States District Court Judge

COPY TO:

HON. CATHY ANN BENCIVENGO
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL

---

[3] Although the parties described at considerable length the dispute surrounding Dimension One's production of Ouellette's deposition transcript to Coverplay during discovery in this case, the court finds this irrelevant to the admissibility of the transcript under Rule 804(b)(1). The court notes, however, that this account, and other references throughout the motions *in limine*, provide an unwelcome insight into the appalling lack of professional cooperation between counsel in this case.